UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | : |                       |
|--------------------------|---|-----------------------|
|                          | : |                       |
| v.                       | : | No. 3:15-cr-52(VLB)   |
|                          | : |                       |
| Anthony Sabato           | : |                       |
|                          | : | June 2, 2021          |
|                          | : |                       |

**MEMORANDUM OF DECISION DENYING ANTHONY SABATO'S
MOTION FOR IMMEDIATE RELEASE UNDER FIRST STEP ACT [DKT. 132]**

Before the Court is Defendant, Anthony Sabato's, motion for immediate release under the First Step Act. [Mot., Dkt. 132]. Mr. Sabato seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Sabato argues the following circumstances constitute extraordinary and compelling reasons justifying his request for compassionate release: (1) his health conditions (interstitial lung disease, COPD, and emphysema), (2) he has exhibited good conduct during incarceration, and (3) he is at low risk of recidivism. [*Id.*]. Mr. Sabato further argues that a sentence of time served is sufficient to accomplish the goals of sentencing. [*Id.*]. The Government objects, arguing that Mr. Sabato's medical records show that his medical conditions are mild, he receives close monitoring and consistent treatment while in custody, and his criminal history weighs against release. [Opp., Dkt. 144]. For the following reasons, the Court denies Mr. Sabato's motion for compassionate release.

I. BACKGROUND

    a. Case Background

1

On July 6, 2015, Mr. Sabato entered into a plea agreement, in which he agreed to plead guilty to conspiracy to distribute and to possess with intent to distribute at least 280 grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846. [Plea Agreement, Dkt. 29].

On November 18, 2015, Mr. Sabato appeared before the Court for sentencing. [Sentencing Tr., Dkt. 93]. At sentencing, the Court adopted the facts stated in the presentence report ("PSR") with the exception of a paragraph later removed by order of the Court, absent objection to the veracity of the remaining facts. [*Id.*]. The final PSR provided an extensive background of the offense conduct, which included the sale of large amounts of cocaine base and narcotics to an undercover officer. [PSR at ¶¶ 6–30, Dkt. 75]. Further, Mr. Sabato coordinated with the undercover officer to sell a firearm, to which Mr. Sabato proclaimed significant experience in. [*Id.* at ¶ 27 ("Sabato then added he has, "[S]old thousands of guns before. Thousands. . . ."")]. In the plea agreement, Mr. Sabato stated "[f]rom 2014 until the time of my arrest I helped Joel Roman buy & sell over 280 grams of crack cocaine." [*Id.* at ¶ 31].

The PSR also provides a comprehensive list of Mr. Sabato's prior criminal convictions spanning back to 1975. [*Id.* ¶¶ 50–84]. In the 40 years prior to the underlying offense, Mr. Sabato had been convicted of seven counts of assault in the third degree, one count of larceny in the second degree, four counts of larceny in the fourth degree, two counts of burglary in the third degree, two counts of possession with intent to sell controlled substances, four counts of possession of

2

a controlled substance, eight counts of breach of peace, one count of criminal trespass, one count of disorderly conduct, one count of filing a false report, one count of threatening, two counts of forgery, two counts of issuing bad checks, one count of tampering with evidence, one count of conducting an illegal gambling business, one count of possession of a stolen firearm, and one count of wire fraud. [*Id.*]. Based on the Court's calculation, Mr. Sabato has been incarcerated for almost half of the 40 years prior to the underlying conviction.

In addition to the offense of conviction, the PSR outlines Mr. Sabato's uncharged conduct in furtherance of the 1981 murder of a Darien Police Officer who was shot and killed while responding to a burglar alarm at a restaurant in Darien, Connecticut. [*Id.* at ¶¶ 88–99]. At sentencing, the Court found that the inculpatory information contained in the final PSR relating to this murder, largely consisting of Mr. Sabato's own statements, was "highly credible and extremely reliable." [Sentencing Tr. at 25]. As found by the Court at sentencing, Mr. Sabato was invited to participate in a burglary at a restaurant in Darien, but he chose not to participate because he believed the restaurant was alarmed. [*Id.*]. Instead, he chose to rent his firearm to the perpetrators with full knowledge of the intended use and potential risks. [*Id.* at 25–26]. Then, after the shooting, Mr. Sabato instructed the perpetrators on how to destroy the firearm. [*Id.* at 26]. By his own admission, Mr. Sabato aided and abetted in the burglary and the murder, and he obstructed justice. [*Id.*]. The Court found there was probable cause to believe Mr. Sabato was an accomplice to the murder of the Darien police officer.

At sentencing, the Court considered the 3553(a) factors in determining an appropriate sentence for Mr. Sabato. [*Id.* at 52–62]. The Court made note of the seriousness of the offense conduct, which was trafficking an illegal substance that has contributed to the destruction of the lives of the people who use it and the community at large. [*Id.* at 55]. The Court also noted the deplorable conduct relating to the aiding and abetting of burglary and murder of a law enforcement officer. [*Id.*]. The Court found chilling the way in which Mr. Sabato discussed his involvement in the death of the police officer. [*Id.*].

Though the Guidelines recommended a sentence of 121 to 151 months incarceration, the Court found the Mr. Sabato's criminal history score understated his criminal history. [*Id.* at 58–59]. The Court sentenced Mr. Sabato to 165 months incarceration to be followed by 5 years of supervised release. [Judgment, Dkt. 73]. Mr. Sabato has served approximately 74 months, which is less than half his 165-month custodial sentence.

    b. <u>Medical Conditions</u>

Mr. Sabato is now 63 years old. [PSR at p.2 (placing date of birth in December 1975)]. On April 16, 2021, Mr. Sabato was reported by BOP Health Services as having "COPD and restrictive lung disease that is worsening." [Gov. Produced Med. Records at 2, Dkt. 146]. At the time, a pulmonary consultation was ordered. [*Id.* at 3]. However, the medical records do not indicate his conditions are serious or pose an imminent threat. For example, less than a year before the April 2021 referral, the BOP reported that Mr. Sabato's COPD was "[a]symptomatic." [*Id.* at 112]. The records also show that in April 2021, he had a CT Scan that showed

4

some upper lobe emphysema and mild interstitial fibrosis at the base, but the interstitial lung disease has not progressed over the last several years. [*Id.* at 162]. Mr. Sabato has not provided a medical opinion or other evidence establishing the severity of these conditions or that they pose a unique threat. Nor has he produced any evidence that the BOP is incapable of caring for him.

In December 2020 Mr. Sabato was infected with COVID-19 and did not report having any severe symptoms or requiring hospitalization. [Def. Produced Med. Records at PDF p. 7, Dkt. 134]. Mr. Sabato has also received both doses of the Moderna COVID-19 vaccine and is now deemed fully inoculated. [Gov. Produced Med. Records at 118].

    c. <u>Confinement</u>

Mr. Sabato has provided his disciplinary record from the BOP showing that since his incarceration for the underlying offense he has only one discipline from 2016 for refusing a work/program assignment. [Dkt. 132 at Ex. D]. BOP records show that Mr. Sabato is listed as having a low risk of recidivism and his security classification is low. [*Id.* at Ex. C].

Mr. Sabato is currently housed at FMC Lexington, in Lexington Kentucky. According to BOP records, 781 inmates have been fully inoculated from COVID-19.[1] This represents 67% of the inmate population.[2] As of June 2, 2021, no inmates

---

[1] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited June 2, 2021).
[2] *FMC Lexington*, BOP.Gov, available at: https://www.bop.gov/locations/institutions/lex/ (last visited June 2, 2021) (showing 1,174 total inmates at FMC Lexington).

5

are infected with COVID-19 and 2 staff members are.[3] As of June 2, 2021, 9 inmates died and 693 recovered.[4] However, though the number of deaths at FMC Lexington are higher than most BOP facilities, this is likely because FMC Lexington is a medical center with an adjacent minimum security camp.[5]

II.     LEGAL STANDARD

As a general rule of finality, courts may not modify sentences once imposed. The court may not modify a term of imprisonment once it has been imposed except as prescribed by law, including Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. 3582(c). Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a

---

[3] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited June 2, 2021).
[4] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited June 2, 2021).
[5] *FMC Lexington*, BOP.Gov, available at: https://www.bop.gov/locations/institutions/lex/ (last visited June 2, 2021).

6

reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "The defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing to *United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020)).

III. ANALYSIS

a. Exhaustion

Defense counsel reports that it requested compassionate release from the warden of FMC Lexington, which was denied on January 12, 2021. [Mot. at 1]. The Government acknowledges that Mr. Sabato has satisfied the exhaustion requirement. [Opp. at 24]. The Court agrees and finds Mr. Sabato exhausted his administrative rights as required under § 3582(c)(1)(A).

b. Extraordinary and Compelling Reasons

Mr. Sabato argues that three circumstances, when considered in concert, provide extraordinary and compelling reasons warranting a sentence reduction to time served.

First, Mr. Sabato argues that his "health conditions, independent of the risk of COVID-19 present extraordinary and compelling reasons to grant Mr. Sabato's request for a sentence modification." [Mot. at 3–4]. However, he has not met his burden in establishing that his health conditions are extraordinary and compelling. The only evidence before the Court are the medical records. There is no

7

interpretation within those records that recommends his release or suggests that release would be helpful in treating his conditions. Mr. Sabato has not provided a medical opinion relating to the severity of his condition or his prognosis. The Court is not a medical expert capable of discerning the difference between a mild case of COPD or interstitial lung disease and someone with severe debilitating disease.

Second, Mr. Sabato argues that his rehabilitation supports a finding of extraordinary and compelling reasons warranting his immediate release. The only evidence of rehabilitation established is that he has not received a discipline ticket in the last 5 or so years. While it is wise to remain discipline free, the mere lack of discipline for that length of time is not extraordinary or compelling. Further, Congress has directed that "[r]ehabiliation of the defendant alone shall not be considered an extraordinary and compelling reasons." 28 U.S.C. § 994(t). While the Court recognizes that Mr. Sabato is not relying on rehabilitation alone in his motion, there is a clear federal policy suggesting that rehabilitation should not be given much weight, particularly where—as here—the other considerations fall well short of being "extraordinary and compelling."

Third, Mr. Sabato claims he has a low risk of recidivism, relying on his advanced age and the BOP's designation of him being such. This is not persuasive. Mr. Sabato's age alone does not exhibit a low risk of recidivism because he was already relatively old when he committed the underlying offense conduct at the age of 57. Any difference between his risk of recidivism at 63 as compared to 57 is minimal at best. Further, there is no evidence showing why the BOP designated him as being at a low risk of recidivism. The evidence supports

the opposite conclusion. Mr. Sabato is a long-time recidivist, having committed multiple felonies and misdemeanors that included violence and drugs. He has been given sentences much longer than this—having once been sentenced to eight years—which proved ineffective in deterring him.

Therefore, the Court rejects Mr. Sabato's arguments and finds that he has not established extraordinary and compelling reasons warranting a sentence reduction to time served.[6]

c. <u>Section 3553(a) Factors</u>

Though the Court has found Mr. Sabato has failed to establish extraordinary and compelling reasons to warrant his request for a sentenced reduction to time served, the Court will also consider whether he would have been entitled to release under the section 3553(a) factors. Mr. Sabato argues that a sentence of time served is sufficient to accomplish the goal of sentencing. He cites to his minimal disciplinary history, the BOP's designation of him as a low risk of recidivism and low security classification, his age, and his health conditions as making him "homebound and unlikely to be able to physically reoffend." The Government argues that sentencing factors weigh heavily against a sentence reduction.

The Court agrees with the Government for many of the reasons stated during Mr. Sabato's sentencing in 2018, which remain unchanged. His underlying offense

---

[6] To the extent Mr. Sabato is relying on the existence of the COVID-19 pandemic as establishing an extraordinary and compelling reason warranting release, the Court rejects that argument. Mr. Sabato has been fully inoculated and the risk of infection at FMC Lexington is low. Further, he had COVID-19 and did not experience severe illness, which suggests his health conditions are not so severe to put his life at risk from a breakthrough infection should he have one

9

conduct involved selling an illegal substance that destroys the lives of its users, addicts who are powerless to resist. It not only destroys the addict but also the people who love and rely on them and their community. During the course of his offense conduct, he repeatedly bragged about his illegal conduct and showed no remorse for the effect his predatory behavior has on the addicts, their family and their community.

In addition, Mr. Sabato has one of the most, if not the most, pervasive criminal history that has come before this Court. He wasted almost the entirety of his adult life by either engaging in illegal conduct or being punished for his illegal conduct. He has shown he cannot be deterred with lenient or serious sentences. There is no reason for the Court to believe that, if released, he would not return to the same criminal and often violent behavior in which he regularly engaged, including from his own home.

Further, Mr. Sabato's claim that his health conditions make him unlikely to reoffend is unpersuasive. As stated above, Mr. Sabato has failed to show the severity of his health conditions and whether they are debilitating. Further, even if his health conditions would make him "homebound" as he suggests, the vast majority of the underlying offense conduct occurred within the confines of his own home. Meaning, even if Mr. Sabato was truly and fully homebound, he could have still conducted the underlying offense conduct and there is no reason to think he would not do so again if given the opportunity.

Therefore, the Court would have denied Mr. Sabato's motion regardless of his failure to show extraordinary and compelling reasons because the section 3553(a) factors weigh heavily against a sentence of time served.

IV. CONCLUSION

For the above reasons, the Court denies Mr. Sabato's motion for immediate release under the First Step Act. [Dkt. 132].

IT IS SO ORDERED.

                                                     /s/
                                                Hon. Vanessa L. Bryant
                                                United States District Judge

Dated this day in Hartford, Connecticut: June 2, 2021